# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

LORI ROHR,

          Plaintiff,                    **Case No. 2:08-cv-345**
                                    **JUDGE GREGORY L. FROST**
    v.                             **Magistrate Judge Mark R. Abel**

DESIGNED TELECOMMUNICATIONS, INC.
SHORT TERM DISABILITY PLAN, et al.,

          Defendants.

## OPINION AND ORDER

This case involves the denial of disability benefits under an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* This matter is before the Court on Defendants' Motion for Judgment on the Merits ("Defendants' Motion") (Doc. #15) and Plaintiff's Motion for Judgment on the Administrative Record ("Plaintiff's Motion") (Doc. # 16). For the reasons that follow, the Court **GRANTS** Plaintiff's Motion and **DENIES** Defendants' Motion.

## I. BACKGROUND

Plaintiff Lori Rohr applied for disability benefits from her insurer Defendant Jefferson Pilot Financial Insurance Company ("Jefferson Pilot"), which were granted. Jefferson Pilot subsequently concluded that Plaintiff was no longer disabled and terminated her benefits. That decision was sustained through two administrative appeals. Plaintiff now appeals to this Court.

### A. Plan Provisions

The governing disability insurance plan in this case is a group policy, Policy Number 000010042369, issued by Jefferson Pilot to Plaintiff's employer's parent company, Designed

Telecommunications, Inc. ("the Plan"). (Administrative Record "R." 417-433.)[1] The Plan

provides to participants who satisfy its definition of disability a weekly benefit equal to 60% of

the participant's weekly salary, for a maximum of 24 weeks.[2] (R. 420.) Benefits become

payable on the fifteenth consecutive day of disability. *Id.* The Plan defines "Total Disability" as

> the Insured Person's inability, due to Sickness or Injury, to perform each of the
> main duties of his or her regular occupation.

(R. 433.)

The Plan grants discretion to Jefferson Pilot in the performance of its claim processing

responsibilities. (R. 429.)

## B. Facts

Plaintiff began work with A&J Technologies, Inc., a Virginia-based company, in October

2000. (R. 143.) A&J Technologies is a wholly-owned subsidiary of Designed Communications,

Inc. *Id.* By virtue of her employment, Plaintiff was a participant in short-term and long-term

disability plans established and maintained by Designed Communications.

Plaintiff was employed as A&J Technologies' "controller," a "key management

position." (R. 143.)

> The controller assumes responsibility for hiring, human resources, benefit
> management, preparation of financial statements, payroll, all accounting and
> records management, taxes and compliance, and supervising of two employees
> along with contact with all other employees as needed.

*Id.*

---

[1]The Administrative Record is filed under seal with this Court. (Doc. # 17.)

[2]If a participant remained disabled for the full 24-week period, his or her coverage "rolls
over" into a long-term disability plan also insured by Jefferson Pilot. (R. 434-462.)

Plaintiff's medical problems began in July 2001 when she was diagnosed with Graves' disease, an autoimmune disorder that stimulates the thyroid gland to produce and secrete excess thyroid hormones, causing hyperthyroidism. The Merck Manual of Medical Information (2nd ed.) at 949. Among the adverse effects of Graves disease are itchy, puffy, and bulging eyes that cause vision problems. *Id.* at 950. Although her thyroid disorder stabilized, Plaintiff continues to suffer from painful and itching eyes. (R. 295, 301-302, 308.)

Subsequent to the Graves' disease, Plaintiff developed other medical problems. Her medical records generally identify Graves' disease, chronic fatigue syndrome, muscle atrophy, fibromyalgia, ophthalmopathy, and migraine headaches. (R. 73, 238, 301, 309.) Plaintiff also suffers from depression and anxiety secondary to her physical problems. (R. 87, 301-302.) She first sought treatment for these other medical problems in 2004. (R. 301.)

## C.  Plaintiff's Application for Short-Term Disability Benefits

Plaintiff's last day of work was December 9, 2005. (R. 384.) She applied to Jefferson Pilot for short-term disability benefits that would become effective December 10, 2005. (R. 308, 318.) In her application for benefits, Plaintiff reported, in addition to the eye problems and Graves Disease, that she had experiencing muscle atrophy, muscle pain, fatigue and chronic migraine headaches. (R. 308.)

Diane L. Johnson, M.D., A.A.F.P., Plaintiff's primary care physician, submitted an Attending Physician's Statement in support of Plaintiff's application. (R. 330-331.) Dr. Johnson reported Plaintiff's objective symptoms as "[m]ultiple trigger points, hyperreflexia, weakness of muscles." (R. 330.) She identified "fatigue, weakness [and] muscle pain" as subjective symptoms. Dr. Johnson found Plaintiff to be totally disabled from her occupation and opined

that she would be able to return to work in 2 or 3 months.  (R. 330, 331.)

Plaintiff's benefits were approved through December 30, 2005.  (R. 318.)  Because the

Plan has a 14-day elimination period, benefits did not become payable until December 24, 2005.

(R. 318.)

On February 27, 2006, Jefferson Pilot advised Plaintiff that it had completed its review of

her short-term disability claim and that benefits beyond December 30, 2005 would be denied.

(R. 303-305.)  In the "Summary" section of the letter, Jefferson Pilot stated:

> Your occupation as an Office Manager is listed as being a sedentary functional
> demand occupation.
>
> The definition of sedentary work is:
> *       Sitting for six hours out of an eight-hour day
> *       Lifting no more than 10 lbs. occasionally (0-20 times a day)
> *       Possible frequent lifting of small objects weighing less than 10 lbs.
>
> Based on a formal review of your file in conjunction with the definition of totally
> disability (*sic*) and sedentary work, your continued disability is not substantiated
> and therefore no additional benefits are payable.

(R. 304.)  Jefferson Pilot's decision to terminate Plaintiff's benefits was based on a review by

Luann Wodman, one of its in-house nurses.  (R. 415.)  The letter also informed Plaintiff of her

appeal rights.

**D.  Plaintiff's First Administrative Appeal**

Plaintiff timely appealed.  (R. 296-299, 294-295.)  She provided additional information

about the treatment she had received, wrote a letter describing her symptoms, and supplied

Jefferson Pilot with a list of her physicians.  (R. 296-299.)  Plaintiff also submitted medical

records and letters from her providers.

Phyllis Berg, Ph.D., a psychologist, wrote at length about Plaintiff's medical condition.

(R. 301-302.) Dr. Berg noted that she had been treating Plaintiff since May 2004 and had seen her 34 times for individual psychotherapy. (R. 301.) Dr. Berg opined that Plaintiff was "significantly challenged to remain at her desk for six or more hours . . . . [and that] her cognitive skills required by her job description were impaired due to both her physical and emotional status." (R.302-302.)

Dr. Johnson, Plaintiff's primary care physician, also submitted a letter in support of Plaintiff's appeal:

> Lori Rohr has been a patient of this practice since July 2, 2001 when she was diagnosed with Graves disease. Subsequent to that, she has experienced extreme fatigue with loss of strength. We have battled the fatigue and depression with little luck. I had recommended disability due to the chronic fatigue and fibromyalgia, hoping she could work on physical therapy regularly to increase strength and endurance. She is unable to even sit for extended periods and has difficulty concentrating.

(R. 292.)

While her appeal was under review, Plaintiff reported to Jefferson Pilot that she had relocated to Columbus, Ohio. (R. 242.) She also submitted additional medical records, including records from her physician in Columbus, Steven L. Delaveris, D.O. *Id.* In his initial examination (March 16, 2006), Dr. Delaveris's impression was: "Fatigue. Chronic fatigue syndrome, Hypertension. Palpitations. Anxiety/depression. Graves' disease status post radiation therapy and resulting hypothyroidism. Migraine headaches." (R. 247.) He observed that Plaintiff cried uncontrollably throughout his evaluation. He wrote, "She is … clearly depressed with an anxious component to it." *Id.* An April 6, 2006 note from Dr. Delaveris observed that Plaintiff was suffering from "overwhelming fatigue." (R. 245.)

On June 19, 2006 Jefferson Pilot denied Plaintiff's appeal. (R. 226-230.) Jefferson Pilot

cited the relevant definitions in the Plan documents and explained that the limitations and/or

restrictions placed on a participant by his or her physician must be supported by medical

evidence such as office and treatment notes, testing results and consultation reports.  (AR 227)

The ensuing pages consist of 17 paragraphs summarizing various medical records, concluding:

> In summary, the medical documentation shows that your treatment has been
> conservative, your physical examination and the diagnostic findings have been
> normal and do not support a condition that would render you unable to perform
> your occupation and does not support a total disability.

(R. 229.)   Jefferson Pilot's decision was based on the opinion of one of its in-house nurses, Rita

Person, who noted in the file that she was "not qualified to comment on treatment for anxiety

and depression"  (R. 413, 414.)

## E.  Plaintiff's Second Administrative Appeal

Plaintiff timely appealed.  (R. 58-61, 71.)  Among the new records Plaintiff supplied with

her appeal were notes from Alan G. Resor, M.D., a psychiatrist.  At his initial session with

Plaintiff on June 16, 2006, Dr. Resor diagnosed Plaintiff as suffering from "Major Depression

probably as a complication of Graves Disease or whatever is going on neurologically with her."

(R. 87.)  He noted that antidepressants were not particularly helpful because they cause migraine

headaches.  He added, "Her present mental status is significantly depressed."  *Id.*  In a

subsequent note (July 19, 2006), Dr. Resor wrote:

> Lori is still quite depressed and is getting ready to hire an attorney to try to get
> disability benefits for the various illnesses she has.  I think most of them do
> prevent her from working and the depression is also a big contributor because she
> cannot take antidepressants very well.

(R. 88.)

Plaintiff also submitted treatment records from her mental health therapy that began in

April 2006 (R. 279-287), as well as a mental health evaluation and a letter from her therapist,

Sue A. Marsh, L.I.S.W., A.C.S.W., dated August 24, 2006 (R. 72-75).  Marsh wrote:

> The enclosed mental health evaluation will indicate that Ms. Rohr is totally
> disabled and unable to perform the main duties of her occupation.  Her physical
> diseases and mental health problems have caused her to have chronic pain and
> lack of energy and visual issues and memory and concentration difficulties and
> anxiety and depression.
>
> The combination of physical and mental disease incapacitate her and she could
> not complete the tasks of her job or be able to have regular attendance or
> complete the responsibilities of her job.

(R. 72.)

The record also contains a July 28, 2006 letter to Dr. Delaveris from Dr. Kevin

Hackshaw, a rheumatologist at the Ohio State University.  (R. 67-68.)  Dr. Hackshaw confirmed

the diagnosis of fibromyagia, noting that Plaintiff had "[t]ender points at 18/18 tender point sites,

with hyperalgesia, consistent with fibromyalgia."  (R. 68.)  He also reported sensitive skin, eye

pain, dryness of the eyes, numbness, weakness, and chronic migraine headaches.  (R. 67.)  He

added, "She has problems with word finding, forgetfulness in the middle of a sentence, some

confusion[,] and concentration is short or non-evident."  *Id.*  In a note dated September 20, 2006,

Dr. Delaveris wrote, "She remains unable to engage in gainful employment.  We would consider

her temporarily and totally disabled as a consequence of the foregoing."  (R. 62.)

Records written on June 7, 2006 by Dr. Dan Jones, a neurologist, state: "The patient is a

pleasant yet obviously depressed and emotionally labile 48-year-old female."  (R. 77.)  His

review of Plaintiff's systems was "[r]emarkable for clumsiness, numbness, back pain, neck pain,

nausea, vomiting, depression, confusion, light sensitivity, headaches, palpitations, shortness of

breath with exertion, panic attacks and memory loss."  (R. 78.)

Plaintiff also submitted a letter from her employer, signed by the president, the assistant manager, and the assistant controller, which in pertinent part states:

> Lori has been a responsible and capable controller. But during 2005, we noted a change in her demeanor at work. She became withdrawn, seemed extremely stressed from unrelated work problems, and was exhausted all the time and unable to concentrate. . . . She became increasingly more irritable, which was unlike her. . . . She seemed overwhelmed, complained of frequent migraines and all over physical pain and seemed extremely depressed. Therefore she could not perform her duties effectively.
>
> Because of the nature of A&J's controller position and because A&J is a small company and knowledge of how the company worked and confidentiality were major issues, we knew that a permanent replacement for her would be required immediately.

(R. 143.)

Jefferson Pilot asked Dr. Anthony Metcalfe to review Plaintiff's file. Dr. Metcalfe's report consists of six pages summarizing the records that he reviewed [the same records listed above], followed by his conclusion:

> In conclusion, it appears that Ms. Rohr has seen multiple healthcare providers for her symptoms which include what appears to be a most significant refractory depression. In fact, it appears that she has been treated intermittently for depression for many years. She has also subsequent to her depression, developed symptoms consistent with fibromyalgia and chronic fatigue syndrome. As often happens to people who have these diagnoses, she has also sought alternative treatment. It appears that none of the treatments that Ms. Rohr has tried have actually helped her symptoms. Additionally, with the exception of dry eyes and multiple tender points, all of the physical examinations of Ms. Rohr in the file indicate no significant abnormalities. There is insufficient objective medical documentation in the file to indicate that Ms. Rohr was or is incapable of sitting for six hours out of an eight-hour a day or lifting less than 10 pounds on an occasional basis from December 30, 2005 onward.

(R. 14.)

On January 8, 2007 Jefferson Pilot denied Plaintiff's appeal. (R. 4-6.) The denial letter consists of a summary of Plaintiff's medical records and concludes:

There is very little objective medical evidence to support that you are unable to perform the main duties of your occupation due to your physical condition. With the exception of multiple tender points consistent with fibromyalgia, all of your physical exams have been essentially normal. Your thyroid tests were normal and labs to evaluate for rheumatoid arthritis, muscle damage, autoimmune disease and inflammation were also normal. Ms. Rohr, while we sympathize with your situation, we must base our decision on the objective medical documentation in your file. The documentation does not support a condition that would render you unable to perform your own sedentary occupation and does not support a total disability beyond 12/30/05.

(R. 5.)

## F. Plaintiff's Appeal to this Court

On April 14, 2008 Plaintiff timely appealed to this Court. Plaintiff named as Defendants Designed Telecommunications Inc. and Lincoln National Life Insurance Company.[3] On February 2, 2009 Plaintiff and Defendants filed their motions for judgment on the administrative records. (Docs. # 15, 16.) On March 5, 2009 Defendants filed Defendants' Memorandum in Opposition to Plaintiff's Motion ("Defendants' Memorandum in Opposition") (Doc. # 20) and Plaintiff filed Plaintiff's Reply Memorandum in Support of her Motion for Judgment on the Administrative Record (Doc. #21). On March 16, 2009 Defendants filed a reply in support of their motion. (Doc. # 22.)[4]

## II. STANDARD

Plaintiff's claim for benefits is governed by ERISA. An ERISA benefits determination is

---

[3]On July 2, 2007 Jefferson Pilot Financial Insurance Company merged into Lincoln National Life Insurance Company, and as a result of the merger Lincoln is responsible for all of Jefferson Pilot's legal obligations, including any liability incurred in this action. (Doc. # 15 at 5 n.1.)

[4]Pursuant to the Preliminary Pretrial Order issued in this action, no reply briefs were permitted. (Doc. # 7.) Here, however, there is no need to strike Defendants' reply brief since it does nothing to change the results reached by this Court on the parties' dispositive motions.

reviewed under the "arbitrary and capricious" standard when, as is the case here, the plan gives

the fiduciary discretionary authority to determine eligibility for benefits or to construe the terms

of the plan. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989); *Borda v. Hardy, Lewis,*

*Pollard, & Page, P.C.*, 138 F.3d 1062, 1066 (6th Cir. 1998).  Under this deferential standard of

review, the benefits decision will be upheld if " 'it is possible to offer a reasoned explanation,

based on the evidence, for the particular outcome.' " *Haus v. Bechtel Jacobs Co., LLC*, 491 F.3d

557, 561-62 (6th Cir. 2007) (quoting *Davis v. Kentucky Fin.*, 887 F.2d 689, 693 (6th Cir. 1989)).

"Review under [the arbitrary and capricious] standard is extremely deferential and has

been described as the least demanding form of judicial review.  It is not, however, without some

teeth." *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003) (citation

omitted). " 'Deferential review is not no review,' and 'deference need not be abject.' " *Id.*

(citations omitted).

## III.  ANALYSIS

Plaintiff argues that Jefferson Pilot's termination of her disability benefits was arbitrary

and capricious because, *inter alia*, it (A) ignored and/or rejected the unanimous opinions of

Plaintiff's treating physicians and her employer that she could not work and instead relied upon

the opinion of a doctor that was internally inconsistent, (B) relied upon the opinion of a doctor

who performed only a paper file review, and (C) failed to appropriately apply the definition of

totally disabled to Plaintiff.  This Court agrees.

### A.  Rejection of the Opinions of Plaintiff's Treating Physicians and her Employer

It is undisputed that five medical professionals expressly opined that Rohr was totally

disabled from working: Dr. Resor, psychiatrist (R. 88), Dr. Berg, psychologist (R. 301-02, Dr. Johnson, primary care physician (R. 292, 330-331), Ms. Marsh, therapist (R. 72), Dr. Delaveris, second primary care physician (R. 062-64). Indeed, Plaintiff was not seen by any medical professional who found her to be able to work.[5] Dr. Metcalf, who did not examine Plaintiff, is the only medical professional who disagreed with Plaintiff's treating physicians and therapist.

In defense of Dr. Metcalf's opinion, Jefferson Pilot argues:

Defendants do not dispute the diagnosis of depression made by several of Plaintiff's doctors. Dr. Metcalf did not "reject" these opinions, as Plaintiff contends. Dr. Metcalf made the reasonable determination, based on all available evidence, that Plaintiff's depression did not render her totally disabled, in part because she sought and received treatment for it.

Likewise, Dr. Metcalf did not "ignore" the opinions of Plaintiff's physicians and employers that she could not work. Dr. Metcalf repeatedly acknowledged and analyzed the medical records, notes and opinions provided by Plaintiff's treating physicians at every level of review. In light of this unassailable fact, it is absurd to suggest that the doctors' opinions were ignored. Ultimately, Dr. Metcalf determined that these opinions did not satisfy Plaintiff's burden under the subject policy.

Defendants' Memorandum in Opposition at 9.

Jefferson Pilot's argument is not well taken. Simply because Dr. Metcalf recounted six pages of "the medical records, notes and opinions provided by Plaintiff's treating physicians at every level of review" does not mean that he did not ultimately reject or ignore them, and

---

[5]Records from two other medical professionals who did not opine on the ultimate question of whether Plaintiff was totally disabled indicate Plaintiff had serious medical conditions. (*See* R. 77 wherein a rheumatologist states that Plaintiff "has problems with word finding, forgetfulness in the middle of a sentence, some confusion[,] and concentration is short or non-evident"; R. 77, 78 wherein a neurologist states that Plaintiff was "obviously depressed and emotionally labile 48-year-old female" who was "[r]emarkable for clumsiness, numbness, back pain, neck pain, nausea, vomiting, depression, confusion, light sensitivity, headaches, palpitations, shortness of breath with exertion, panic attacks and memory loss").

Defendants' statement to the contrary does not change this fact. *See Kalish v. Liberty Mutual/Liberty Life Assur. Co. of Boston*, 419 F.3d 501, 509 (6th Cir. 2005) (rejecting as inadequate a report recounting six pages of medical history and engaging in only one page of analysis). Indeed, of necessity Dr. Metcalf rejected or ignored the opinions of Plaintiff's treating physicians and therapist since each and every one of them found her totally disabled and Dr. Metcalf concluded that she was not totally disabled. While Jefferson Pilot was not required to credit the opinions of Plaintiff's physicians, *McDonald*, 347 F.3d at 169, it was not entitled simply to ignore them. Indeed, in a similar situation, the Sixth Circuit stated:

> Nothing else in MetLife's second denial provides any indication that MetLife engaged in a principled reasoning process. MetLife failed to offer any reason for rejecting Dr. Schneider's conclusions about Elliott's ability to work. Generally speaking, a plan may not reject summarily the opinions of a treating physician, but must instead give reasons for adopting an alternative opinion. *Evans v. Unumprovident Corp.*, 434 F.3d 866, 877 (6th Cir. 2006) ("[A] plan administrator may not arbitrarily disregard reliable medical evidence proffered by a claimant, including the opinions of a treating physician.") (citing, *inter alia, Black & Decker Disability Plan v. Nord*, 538 U.S. [822,] 833 [(2003)]; *McDonald*, 347 F.3d at 163-66). . . . Of course, MetLife need not defer automatically to the treating physician's opinion. *Black & Decker*, 538 U.S. at 830-32. However, that MetLife gave "greater weight" to a non-treating physician's opinion for no apparent reason lends force to the conclusion that MetLife acted arbitrarily and capriciously. *See Kalish*, 419 F.3d at 508 (citing *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 295 (6th Cir. 2005)).

*Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 620 (6th Cir. 2006). *See also Pitts v. Prudential Ins. Co. of America*, 534 F. Supp. 2d 779, 789 n. 3 (S.D. Ohio 2008) (rejecting the argument that "special weight may never be given to treating physicians . . . [when] this Court is distinguishing the value of two treating physicians' medical opinions versus the opinion of a physician who never met with the Plaintiff and relied solely upon statements from the treating physicians."). Here, Jefferson Pilot failed to offer any "reasons for adopting an alternative opinion." *Elliott*,

473 F.3d at 620.

Further, not only is there no principled reasoning process evident in Dr. Metcalf's rejection of the opinions of Plaintiff's treating physicians, the same is true of the doctor's rejection of the letter from Plaintiff's employer and co-workers that she was unable to perform her job. *See Nickel v. Unum Life Ins. Co. of America*, 582 F. Supp. 2d 869, 878 (E.D. Mich. 2008) (finding denial of benefits arbitrary and capricious because, *inter alia*, "Plaintiff's coworker's affidavits corroborated Plaintiff's claim of extreme fatigue [stating] that Plaintiff's fatigue has materially affected her ability to perform her duties."). Again, Defendants' statement that Dr. Metcalf did not ignore or reject the letter does not make it true.[6] The letter specifically stated that Plaintiff was unable to perform the duties required by her position. Dr. Metcalf offers no explanation at all as to why he rejected the employer's opinion.

Finally, Plaintiff contends that Dr. Metcalf's opinion that she was not disabled is internally inconsistent because he does not challenge the credibility of Plaintiff's diagnoses of fibromyalgia, chronic fatigue syndrome, and "significant refractory depression," acknowledges that none of the treatments that "Rohr has tried have actually helped her symptoms," yet in the same paragraph concludes that there is insufficient evidence to find Plaintiff disabled, (*i.e.*, "with

---

[6]The Court notes also that Defendants are mistaken about the contents of Dr. Metcalf's report. The report does not attribute Plaintiff's subjective symptoms to her son in Iraq. Instead, all that Dr. Metcalf reports about the employer's letter is:

> There appears in the file a letter by Ms. Rohr's employer, which documents her deteriorating work capacity. This was written on August 5, 2006. Her employer documented that Ms. Rohr had previously been an excellent employee, but she seemed overwhelmed with complaints of frequent migraines, all over physical pain, and "seemed extremely depressed."

(R. 13.)

the exception of dry eyes and multiple tender points, all of the physical examinations of Ms. Rohr in the file indicate no significant abnormalities." The Court agrees with Plaintiff that this paragraph contains a glaring inconsistency. That is, if Plaintiff is properly diagnosed with fibromyalgia, chronic fatigue syndrome, and significant refractory depression how can the file contain no evidence of these appropriately diagnosed disorders? And, how can Plaintiff be diagnosed with these disorders and yet at the same time have no significant abnormalities? The questions are, of course, rhetorical.

Moreover, in its second appeal denial letter, Jefferson Pilot stated that Rohr's medical evaluations were normal, except for multiple (18 of 18) positive trigger points. However, the record reflects that this statement is factually incorrect. Just above, the Court set out and reviewed many medical records that were not "normal." Simply because Jefferson Pilot focuses on certain tests that were normal does nothing to take away from the fact that many tests were not normal. Further, the exception to which Jefferson Pilot refers is a significant exception since trigger point evaluation is widely accepted as the definitive method for diagnosing fibromyalgia:

> Fibromyalgia is pain in the fibrous tissues, muscles, tendons, ligaments, and other white connective tissues, frequently affecting the low back, neck, shoulders and thighs. *See* The Merck Manual (16th ed. 1992), pp. 1369-70. As Dr. Brummer's report suggests, the term fibromyalgia is often used interchangeably with fibromyositis, or fibrositis. *See Lisa v. Dept. of Health and Human Servs.*, 940 F.2d 40, 43 (2nd Cir. 1991). This condition has only been recognized over the last several years. It causes severe musculoskeletal pain, stiffness and fatigue due to sleep disturbances, although physical examinations will generally be normal. *See Preston v. Secretary of Health and Human Servs.*, 854 F.2d 815, 818 (6th Cir. 1988). The disease cannot be confirmed by objective tests, rather, the diagnosis is made by exclusion and the elicitation of tenderness at certain " 'focal tender points.' " *Id.* Fibrositis patients may also have psychological disorders; the disease afflicts women significantly more often than men. *Id.*

*Mitchell v. Secretary of Health & Human Servs.*, No. 93-1612, 1994 U.S. App. LEXIS 16774,

*10 n. 7 (1st Cir. 1994). *See also Brosnahan v. Barnhart*, 336 F.3d 671, 678 (8th Cir. 2003) ("Brosnahan's testimony and reports … are supported by objective medical evidence of fibromyalgia – consistent trigger-point findings – and by her consistent complaints during her relatively frequent physicians' visits of variable and unpredictable pain, stiffness, fatigue, and ability to function.").

Based on the foregoing, the Court concludes that Dr. Metcalf failed to offer any reasoned explanation, based on the evidence, for his conclusory statement that there was insufficient objective medical documentation in the file to indicate Plaintiff could not work. *See Davis*, 887 F.2d at 693. Without explanation, Dr. Metcalf rejected five of Plaintiff's treating physician's conclusions that Plaintiff was totally disabled and he rejected Plaintiff's employer's opinion that Plaintiff was unable to work. Jefferson Pilot's decision to give " 'greater weight' to a non-treating physician's opinion for no apparent reason lends force to the conclusion that [Jeffferson Pilot] acted arbitrarily and capriciously." *Elliot*, 473 F.3d at 620. Also, the Court finds Dr. Metcalf's opinion is internally inconsistent, which also lends force to the conclusion that Jefferson Pilot acted arbitrarily and capriciously in terminating Plaintiff's disability benefits.

## B. Reliance Upon File Review

Plaintiff argues that Jefferson Pilot's reliance on a review of Plaintiff's file by a non-treating physician is an inadequate basis on which to terminate her disability benefits. In its defense, Jefferson Pilot argues that

> First, it is well-established that ERISA does not require the insurer to seek an [Independent Medical Exame "IME"]. *Rutledge v. Liberty Life Assur. Co. of Boston*, 481 F.3d 655 (8th Cir. 2007); *Fought v. Unum*, 379 F.3d 997 (10th Cir. 2004); *Kushner v. Lehigh Cement Co.*, 572 F. Supp. 2d 1182 (C.D. Cal. 2008). Second, there was no need to conduct an IME in this case because Lincoln already was in possession of all relevant documentation pertaining to Plaintiff's

vocational abilities.  Lastly, this is not a case concerning Plaintiff's "credibility"; rather, it is about whether Plaintiff has produced sufficient information to establish that she was unable to perform the duties of her sedentary occupation. *See, e.g., Semien v. Life Insurance Co. of North America*, 436 F.3d 805 (7th Cir. 2006) (personal examination not required when medical history revealed that psychiatric conditions did not render claimant disabled).

Defendants' Memorandum in Opposition at 9.

Jefferson Pilot's arguments miss the mark.  Plaintiff does not argue that ERISA requires employers to seek an IME, or that Jefferson Pilot was not in possession of all relevant documentation.  Further, Jefferson Pilot did make credibility determinations about Plaintiff's claim that she was unable to work.  Indeed, not only did Jefferson Pilot make credibility determinations about Plaintiff's complaints, but it also made credibility determinations as to the medical personnel that diagnosed Plaintiff as totally disabled.  Again, stating the opposite does not change this fact.  The Sixth Circuit has held that a review only of the medical file of a disability claim is an inadequate basis upon which to deny a claim when, as in this case, the credibility of the claimant's complaints is at issue.  *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 295 (6th Cir. 2005) ("[W]hile we find that Liberty's reliance on a file review does not, standing alone, require the conclusion that Liberty acted improperly, we find that the failure to conduct a physical examination – especially where the right to do so is specifically reserved in the plan – may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination."); *Smith v. Cont'l Cas. Co.*, 450 F.3d 253, 263-264 (6th Cir. 2006) ("[W]e consider CCC's decision to not require an examination as part of the arbitrary and capricious review, especially because Kaplan made credibility determinations concerning Smith's subjective complaints. CCC could have obtained an independent medical examination to evaluate Smith's pain.  Their decision to not perform this examination supports the finding that

their determination was arbitrary.").

Moreover, one of Plaintiff's medical issues relates to her mental health. The Sixth

Circuit has recently observed that claims of this nature are particularly inappropriate for a paper

review:

> Bayer's plan did indeed reserve to the company the right to order physical
> examinations and therapy sessions[7] for the plaintiff. . . . . The failure of the
> administrator to take advantage of that option, especially when faced with a claim
> of mental and emotional instability, is both puzzling and troubling for the very
> reason identified not only by the district court in this litigation, but also by the
> District Court for the Southern District of New York in *Sheehan v. Met. Life Ins.
> Co.*, 368 F. Supp.2d 228, 254-55 (S.D.N.Y. 2005):
>
>> Courts discount the opinions of psychiatrists who have never seen
>> the patient for obvious reasons. Unlike cardiologists or
>> orthopedics, who can formulate medical opinions based upon
>> objective findings derived from objective clinical tests, the
>> psychiatrist typically treats his patient's subjective symptoms . . . .
>> [W]hen a psychiatrist evaluates a patient's mental condition, "a lot
>> of this depends on interviewing the patient and spending time with
>> the patient," . . . a methodology essential to understanding and
>> treating the fears, anxieties, depression, and other subjective
>> symptoms the patient describes.
>
> Although the court in *Sheehan* engaged in *de novo* review, see id. at 252,
> *Sheehan's* point is still relevant for our, albeit deferential, review of the medical
> evidence, because Sheehan highlights the inadequacy of record review when
> determining benefits for someone claiming a mental disability.

*Smith v. Bayer Corp. Long Term Disability Plan*, 275 Fed. Appx. 495, 508 (6th Cir. 2008).

Plaintiff's treating therapist specifically concluded that her depression prevented her from

engaging in the required duties of her position, *i.e.*, that she was totally disabled under the

definition of the Plan. Further, six of Rohr's providers observed that she was obviously

---

[7]The Plan reserves to Jefferson Pilot the right to "have the Insured Person examined by a
Physician, specialist or vocational rehabilitation expert of the Company's choice, as often as
reasonably required[.]" (R. 428.)

depressed. (R. 292 (Dr. Johnson); R. 301 (Dr. Berg); R. 245 (Dr. Delaveris); R. 087, 088 (Dr. Resor); R. 077 (Dr. Jones); R. 072 (Ms. Marsh)). Jefferson Pilot's rejection of these opinions, adds to the evidence before this Court that its termination of Plaintiff's disability benefits was arbitrary and capricious.

**C. Plaintiff's Job Description**

Plaintiff argues that Jefferson Pilot failed to appropriately apply the definition of totally disabled to Plaintiff. This Court agrees.

The question posed to Dr. Metcalfe was whether "the medical records reflected any restrictions and limitations that would prevent the claimant from working in a sedentary occupation from December 30, 2005, forward." (R. 8.) However, pursuant to the Plan, that is not the question to be answered in a disability determination. Indeed, as Defendants correctly argue in their motion for judgment on the administrative record, the issue is "whether a claimant is capable of performing the main duties of his or her occupation." *See* Defendants' Motion at 17 ("However, sickness or injury alone does not constitute total disability; the relevant issue under the policy is whether a claimant is capable of performing the main duties of his or her occupation."). In the case *sub judice*, that is not the question posed to Dr. Metcalf.

Not surprisingly, Dr. Metcalf did not provide an answer to the question of whether Plaintiff was totally disabled as that term is defined under the Plan, but instead answered the question posed to him:

> There is insufficient objective medical documentation in the file to indicate that Ms. Rohr was or is incapable of sitting for six hours out of an eight-hour day or lifting less than ten pounds on an occasional basis from December 30, 2005 onward.

(R. 14.)

As set forth above, Plaintiff's employer described Plaintiff's job as a key management position that has responsibility over "hiring, human resources, benefit management, preparation of financial statements, payroll, all accounting and records management, taxes and compliance, and supervising of two employees along with contact with all other employees as needed."  (R. 143.)  Even Jefferson Pilot concedes that Rohr's job is intellectually challenging.  (R. 410 Plaintiff's "occupation of controller does require a high level of mental concentration and emotional stability to multitask and supervise others".)  Nowhere, however, does Dr. Metcalf consider the actual requirements of Plaintiff's job.  Instead, he only evaluates the physical description category assigned to Plaintiff's job by Jefferson Pilot.  (R. 304 "Your occupation as an Office Manager is listed as being a sedentary functional demand occupation . . . requiring Sitting for six hours out of an eight-hour day[,] Lifting no more than 10 lbs. occasionally (0-20 times a day)[, and] Possible frequent lifting of small objects weighing less than 10 lbs.").  The Plan, however, requires evaluation of ***Plaintiff's actual job*** –not evaluation of the category assigned by the insurer to describe a specific aspect of the position.

By evaluating only the physical requirements of Plaintiff's employment position, Jefferson Pilot ignored the most significant aspects of Plaintiff's job, *i.e.*, the intellectual and/or mental functions.  Jefferson Pilot offers no explanation whatever as to why it failed to evaluate all of the requirements of Plaintiff's job.  In a case similar to the instant action, the Sixth Circuit, in reversing the district court stated:

> The district judge thought that the job description meant that Elliott's job was "sedentary in nature."  The court then concluded that MetLife's denial of benefits, based on Dr. Menotti's conclusion that Elliott could perform "sedentary work," was not arbitrary and capricious.  That reasoning, also relied on by MetLife on appeal, was in error because it relies on a general notion of "sedentary" work rather than on the duties that Ms. Elliott's occupation entailed.  The latter inquiry

is the proper one under the plan's terms.

*Elliot*, 473 F.3d at 618 n.3.

The Court concludes that Jefferson Pilot arbitrarily failed to consider whether Plaintiff's illnesses prevented her from performing the main duties of her employment position which adds great weight to the evidence before this Court that its termination of Plaintiff's disability benefits was arbitrary and capricious.

## IV. REMEDY

Plaintiff argues that she is entitled to have her disability benefits reinstated because Jefferson Pilot's decision to terminate them was arbitrary and capricious. This Court agrees.

Because Plaintiff's disability benefits were awarded and were subsequently terminated as a result of an arbitrary and capricious decision, the proper remedy is "to reinstate all benefits beginning from the invalid termination." *Wenner v. Sun Life Assur. Co. of Canada*, 482 F.3d 878, 883 (6th Cir. 2007) ("Our aim in granting relief under ERISA is to place [the claimant] in the position [s]he . . . would have occupied but for the defendant's wrongdoing. To do so, reinstatement is necessary.*"). See also Williams v. International Paper Co.*, 227 F.3d 706, 715 (6th Cir. 2000) (in "cases, where the review of the medial evidence was arbitrary and capricious or unreasonable, the proper remedy is to retroactively grant benefits without a remand").

In addition, the Sixth Circuit has directed:

> Plan administrators should not be given two bites at the proverbial apple where the claimant is clearly entitled to disability benefits. They need to properly and fairly evaluate the claim the first time around; otherwise they take the risk of not getting a second chance, except in cases where the adequacy of claimant's proof is reasonably debatable. That is not the case here.

*Cooper v. Life Ins. Co. of North Am.*, 486 F.3d 157, 171 (6th Cir. 2007).

In the instant action, like in *Cooper*, there is no evidence in the record that Plaintiff was ever found to be able to perform her job by any of her treating physicians. Indeed, the evidence shows that Plaintiff's medical conditions worsened following Jefferson Pilot's initial finding of total disability. Thus, Plaintiff is "clearly entitled to disability benefits." *Id.*

Accordingly, Plaintiff is entitled to the full 24 weeks of short-term disability benefits permitted under the Plan.

## V. CONCLUSION

The Court concludes that Defendants' decision to terminate Plaintiff's disability benefits was arbitrary and capricious and therefore it **DENIES** Defendants' Motion for Judgment on the Merits (Doc. #15) and **GRANTS** Plaintiff's Motion for Judgment on the Administrative Record (Doc. # 16). Jefferson Pilot is hereby **ORDERED** to reinstate short-term disability benefits retroactive to the date that they were terminated and to compensate Plaintiff for the full 24-weeks permitted under the Plain. The Clerk is **DIRECTED** to **ENTER JUDGMENT** in accordance with this Opinion and Order.

**IT IS SO ORDERED.**

<u>**/s/ Gregory L. Frost**</u>
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**